UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA MOORE as legal custodian of her son, J.M. a minor, and her daughter, A.M. a minor, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 07 C 5908 |
| | ) | |
| vs. | ) | Judge Gettleman |
| | ) | |
| Chicago Police Officers ROBERT SMITH #20648, JAMES EVITT #2508, EDWIN GORMAN #20289, STACEY SMITH #2163, and the CITY OF CHICAGO, | ) ) ) ) | Magistrate Judge Valdez |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' JOINT RESPONSE TO DEFENDANT CITY OF
CHICAGO'S MOTIONS FOR PROTECTIVE ORDERS REGARDING
THE DEPOSITIONS OF CONSTANCE FULLILOVE AND
LORI LIGHTFOOT AND REQUEST FOR SANCTIONS

The City has been gaming the Court and Plaintiffs' counsel since the beginning of this

case.  Undeterred after being chastised and sanctioned by Judge Gettleman for repeatedly abusing

the discovery process, the City has now brought in yet another new lawyer to continue its strategy

of delay and obstruction.  The new motions which the City has now filed, to limit or bar the

depositions of two key witnesses, violate the letter and spirit of Local Rule 37.2, are without

merit, and require sanctions to be imposed on the City.

I.      History of the City's Misconduct in this Case

Plaintiffs' amended complaint alleges that white Chicago police detective Robert Smith,

while off duty, used his police powers to beat, falsely arrest, and otherwise harass and intimidate

11 year old, J.M., and his 13 year old sister, A.M., at a school playground on May 5, 2007.  The

suit further alleges that during and after beating the children, who are African-American, Smith

used his police office to further intimidate them and their mother, Donna Moore, who was forced

to stand by while he obtained, with the willing cooperation of Defendant, and wife, officer Stacey

Smith, and several other officer Defendants, the false arrest and detention of the children.

Plaintiffs also sued the City of Chicago under *Monell* for its alleged *de facto* policies, practices

and customs of failing to adequately train, discipline, supervise, monitor and control officers,

particularly those who, like Defendant Robert Smith, are repeatedly accused by citizens of

brutality and other serious violations of constitutional rights and for its police code of silence.

(Dkt. No. 70).  Discovery and investigation have established that Defendants Robert and Stacey

Smith are both classic problem officers, whom the City has repeatedly failed to adequately

discipline.

At the beginning of the case, the City filed a motion to "structure discovery" which

sought to postpone all *Monell* discovery until fact discovery was completed.  (Dkt. No. 56).

After briefing and argument, this Court denied the City's motion, ordering that Plaintiffs were

entitled to seek discovery on their *Monell* claim.  (Dkt. No. 75).

After failing in its attempt to avoid participating in discovery altogether, the City resorted

to delay, obstruction, and gamesmanship as a means to avoid production of evidence that was

highly relevant to Plaintiffs' *Monell* claim.  As set forth in detail in Plaintiffs' Motion for

Sanctions and during the March 4, 2009 hearing on that motion, from August 2008 to March

2009, the City embarked on a willful course of conduct to deprive Plaintiffs of a significant

portion of their rightful *Monell* discovery and proof by, *inter alia*, requiring Plaintiffs to pursue

relief under Rule 37, then, after an order to compel was obtained, by filing successive motions to

reconsider and by arrogantly and repeatedly defying court orders. (*See* Dkt. No. 188 and 3/4/09

Transcript, attached hereto as Exhibit A).[1]  This culminated with Judge Gettleman, on two

separate occasions, finding that the City and Superintendent Jody Weis were in willful contempt

of Court.  At the first occasion, on March 4, 2009, Judge Gettleman stated:

> THE COURT:  We have the chief law enforcement officer of the City of
> Chicago basically picking and choosing the orders of the federal court that he will
> obey or disobey, and he's chosen to disobey this order.  I believe he is in direct
> contempt of the Court.  It's not even a rule to show cause situation, because he has
> told me he will not obey the order of the Court to turn over these documents,
> which as Mr. Taylor points out are very much or identical to the type of
> documents that he has turned over, that the City of Chicago has turned over on at
> least 29 occasions that you know of and probably more that we've dealt with
> before.

(*See* 3/4/09 Transcript at p. 11, Exhibit A).  At the second occasion, on March 9, 2009, Judge

Gettleman found that Superintendent Weis' defiance of court orders "flies in the face of

everything that this Court stands for and the orders of an independent judiciary stand for" and is

"absolutely intolerable."  (*See* 3/9/09 Transcript at pp. 7-8, 11, 14-16, attached hereto as Exhibit

B).

Unfortunately, the City's obstructionist conduct did not end with Judge Gettleman's

imposition of sanctions.  Since then, the City has continued its strategy of delay and obstruction

with regard to Plaintiffs' *Monell* claim by refusing to produce Robert Smith's entire CR history

and attempting to quash the deposition of *Monell* witness Frank Gross.  (*See* Order of 5/6/09

granting Plaintiffs' Motion to Compel Robert Smith's CR Files, Dkt. No. 217; and Order of

---

[1] The City's bad faith conduct brought Plaintiffs' attempts to proceed with *Monell*
discovery to a grinding halt.  *Monell* depositions of policymaking officials were delayed, as was
the time consuming task of identifying case studies of certain listed egregious repeaters for
further discovery, and informing and consulting with Plaintiffs' experts in order for them to
utilize the case studies and to statistically develop the information.

5/21/09 denying the City's Motion to Quash the Deposition of Frank Gross, Dkt. No. 222).

This obstructionism has also been repeatedly reflected in the City's attempt to prevent Plaintiffs from deposing *any* of the *Monell* witnesses they have noticed. For example, in November of 2008, Plaintiffs were forced to move to compel the depositions of police command personnel Hiram Grau, Maria Maher, Fred Coffey, and Thomas Wheeler. (*See* Order of 12/5/08 granting in part Plaintiffs' Motion to Compel Depositions, Dkt. No. 140). The City also unsuccessfully attempted to bar and/or limit the depositions of former OPS Director Tisa Morris and former Police Superintendent Phil Cline. The City's illicit attempt to prevent Plaintiffs from pursuing *Monell* discovery and to thereby defeat their efforts to prove their *Monell* claim continues with the instant motions.

## II. History of the City's Obstructive Conduct With Regard to the Depositions of Constance Fullilove and Lori Lightfoot

### A. Constance Fullilove

In February of 2009, a full eleven months after a request was specifically made in Plaintiffs' First Request for Production of Documents, the City produced a report of a fitness for duty evaluation of Robert Smith, which was conducted by Constance Fullilove, Ph.D of the Center for Applied Psychology and Forensic Studies. The evaluation was conducted, in part, due to the May 5, 2007 incident involving the Plaintiffs, and in part due to a prior serious incident that has been the subject of numerous prior depositions. In July of 2009, Plaintiffs issued a notice of deposition for Dr. Fullilove. (See Notice of Deposition, attached hereto as Exhibit C). On August 7, 2009, counsel for the City, Rita O'Connor, advised Plaintiffs' counsel by letter that she objected to the deposition of Dr. Fullilove on various grounds but would agree to stipulate

that Robert Smith made statements about the incident in order to avoid her deposition. (*See* August 7, 2009 letter, attached hereto as Exhibit D). On August 24, 2009, Plaintiffs' counsel responded by letter, addressing each of Ms. O'Connor's objections and urging that she withdraw her objections and produce Dr. Fullilove for deposition. (*See* August 24, 2009 letter, attached hereto as Exhibit E). On September 25, 2009, Plaintiffs' counsel spoke with Ms. O'Connor to follow up on his previous letter. Ms. O'Connor advised that she had no control over Dr. Fullilove because she was no longer a City employee and that Dr. Fullilove had informed her that she would not sit for her deposition unless Plaintiffs compensated her at a rate of $250 per hour. Ms. O'Connor further advised that she would withdraw her previous objections to the deposition as long as it was placed under an attorneys' eyes only protective order. Plaintiffs' counsel agreed to this condition and informed Ms. O'Connor that he would send Dr. Fullilove a subpoena.

Unable to find a current address or phone number for Dr. Fullilove, Plaintiffs' counsel requested this information from Ms. O'Connor, who had been in contact with Dr. Fullilove for the past two months. Ms. O'Connor stated that she did not have Dr. Fullilove's address and refused to provide Plaintiffs' counsel with Dr. Fullilove's phone number. After numerous phone calls, Plaintiffs' counsel was able to obtain Dr. Fullilove's phone number from her previous employer. On October 27, 2009, Plaintiffs' counsel and Dr. Fullilove spoke on the phone and reached the following agreement regarding her deposition - - - it would be limited to two hours, it would be conducted at her office, and Plaintiffs' counsel would compensate her at a rate of $100 per hour. On October 28, 2009, Plaintiffs' counsel informed Ms. O'Connor of this agreement by voicemail and email. (*See* 10/28/09 email, attached hereto as Exhibit F). On October 30, 2009, Plaintiffs' counsel spoke with Ms. O'Connor who advised that she was available on November 9,

2009 at 1:00 p.m. for the deposition. On November 2, 2009 at 3:30 p.m., Plaintiffs' counsel faxed and mailed Ms. O'Connor a confirmation letter and amended notice of deposition. (*See* 11/2/09 letter and Amended Notice of Deposition, attached hereto as Exhibit G). Two hours later, yet another counsel for the City, Tom Platt, filed the instant motion which was co-signed by Ms. O'Connor, seeking to limit the time and scope of Dr. Fullilove's deposition despite Plaintiffs' counsel's prior agreement with both Ms. O'Connor and the deponent to conduct the deposition without these limitations.

### B.     Lori Lightfoot

On August 26, 2009, Plaintiffs issued a notice of deposition for Lori Lightfoot, who, from 2002 to 2004, served as the Chief Administrator of the Office of Professional Standards. (*See* Notice of Deposition, attached hereto as Exhibit H). On September 25, 2009, Plaintiffs' counsel spoke with Ms. O'Connor, who advised that she objected to the deposition because Ms. Lightfoot had no direct involvement in the investigation or findings with regard to any CRs involving Defendant Robert Smith. Ms. O'Connor further advised that if Ms. Lightfoot is required to sit for her deposition, she wishes to be paid $650 per hour, which is the hourly rate she bills her clients as an attorney at the law firm of Mayer, Brown. On October 8, 2009, Mr. Platt wrote Plaintiffs' counsel a letter requesting that Plaintiffs "clearly state a detailed basis for Ms. Lightfoot's deposition before she is forced to appear as a deponent in this case." (*See* 10/8/09 letter, attached hereto as Exhibit I). On October 14, 2009, Plaintiffs' counsel responded by letter pursuant to Local Rule 37.2, provided a detailed basis for Ms. Lightfoot's deposition, offered to accommodate Ms. Lightfoot by conducting the deposition at her office, and advised that the deposition would be of similar length to that of Ms. Lightfoot's successor at OPS, Tisa

Morris, which was completed in under four hours. (*See* 10/14/09 letter, attached hereto as

Exhibit J). Over the next two weeks, Plaintiffs' counsel followed up with Mr. Platt several times

to determine if he would agree to produce Ms. Lightfoot or if Plaintiffs would be forced to file a

motion to compel. On October 30, 2009, Mr. Platt advised that he would speak with Ms.

Lightfoot to see if she would agree to Plaintiffs offer. Instead of extending the basic courtesy of

informing Plaintiffs' counsel by phone or letter of the City's position, Mr. Platt instead filed the

instant motion on November 2, 2009 at 6:00 p.m.

## III.     Legal Standard

Fed. R. Civ. P. 26(c) authorizes a court, "for good cause shown," to issue a protective

order barring or limiting discovery when "justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense…" The Court should

consider a request for a protective order limiting discovery against the backdrop of Rule 26(b)(1),

which generally permits broad ranging discovery of any non-privileged information that "appears

reasonably calculated to lead to the discovery of admissible evidence."[2] *Steadfast Ins. Co. v.*

*Auto Mktg. Network, Inc.*, 1999 U.S. Dist. LEXIS 6897, *3 (N.D. Ill. Apr. 29, 1999). A party

---

[2] Rule 26(b)(1) allows a party "to discover any matter . . . that is relevant to any claim or
defense . . . . Relevant evidence need not be admissible at trial if the discovery appears
reasonably calculated to lead to the discovery of admissible evidence." The Supreme Court has
clarified that this test of relevance is meant to be very broad. *See, e.g., Oppenheimer Fund v.
Sanders*, 437 U.S. 340, 348 (1978) (Rule 26 relevance is "construed broadly to encompass any
matter that bears on, or could reasonably lead to other matter that could bear on, any issue that is
or may be in the case."); *Chicago Dist. Council of Carpenters Pension Fund v. D.P. Builders*,
1997 U.S. Dist. LEXIS 17097, *8-9 (N.D. Ill. Oct. 30, 1997) ("relevance for discovery purposes
is much broader than relevance for evidentiary purposes"). Furthermore, "[t]he burden is on the
party resisting discovery to clarify and explain precisely why its objections are proper given the
broad and liberal construction of the federal discovery rules." *Zenith Elecs. Corp. v. ExZec, Inc.*,
1998 U.S. Dist. LEXIS 215, *24-25 (N.D. Ill. Jan. 2, 1998).

seeking a protective order that would limit the wide berth generally given to discovery bears the

burden of establishing good cause to support the issuance of the order by making "a particular

and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."

*Steadfast Ins. Co.*, 1999 U.S. Dist. LEXIS 6897, *3, quoting *Caponigro v. Navistar Int'l Trans.*

*Corp.*, 1994 U.S. Dist. LEXIS 6831, *2 (N.D. Ill. May 18, 1994). As the movant, the City has

the burden of establishing that good cause exists to enter the protective order. *Rubin v. Islamic*

*Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004); *Hobley v. Burge*, 225 F.R.D. 221,

224 (N.D. Ill. 2004) ("Good cause is established by showing that the disclosure will cause a

clearly defined and serious injury.").

**IV.     The City Has Failed to Carry Its Burden of Establishing Good Cause for Limiting the Deposition of Constance Fullilove and Precluding the Deposition of Lori Lightfoot**

      **A.     Constance Fullilove**

The City's request that this Court limit the time and scope of Dr. Fullilove's deposition

should be denied. With regard to scope, the City asks that this Court limit "Plaintiffs to

questions to Dr. Fullilove regarding what Defendant Officer Robert Smith related to her about

the incident" because "questions beyond what Smith related to Dr. Fullilove are not reasonably

calculated to lead to the discovery of admissible evidence, are harassing and embarrassing to

Defendant Smith, and are harassing to Dr. Fullilove" and "to ask Dr. Fullilove about what

psychological tests she gave Smith and what the results mean are nothing more than a vehicle to

embarrass Smith and question Dr. Fullilove's qualifications and ability to determine the mental

fitness of a person." (City Motion at p. 4). As an initial matter, these speculative, stereotyped

and conclusory allegations do not even come close to satisfying the requirements of Fed. R. Civ.

P. 26(c).  *See Smith v. City of Plano*, 2002 U.S. Dist. LEXIS 12642, *6 (N.D. Ill. July 8, 2002)

(Mason, M.J.) (holding that the plaintiff could depose a psychiatrist who performed a fitness for

duty examination of the defendant police officer).  Moreover, Plaintiffs's counsel do not intend

to ask questions about the psychological tests Dr. Fullilove gave to Defendant Smith or what the

results mean, and Plaintiffs' counsel certainly does not intend to question Dr. Fullilove's

qualifications or her abilities as a psychologist.

     As set forth in Plaintiffs' Local Rule 37.2 letter, Plaintiffs seek Dr. Fullilove's deposition

as a fact and 404(b) witness with regard to the statements Robert Smith made to her concerning

the underlying incident, the statements (and apparent misstatements) he made to her concerning

other incidents in which citizens accused him of using excessive force, and for which he was

disciplined, and as a potential *Monell* witness with regard to Plaintiffs' claim that the City of

Chicago has a policy, practice and custom of failing to adequately discipline, supervise, monitor

and control officers, particularly those who, like Robert Smith, are repeatedly accused by citizens

of brutality and other serious violations of constitutional rights.  The City's mechanism of

evaluating an officer for fitness for duty, and its failure to find him unfit after repeated instances

where he has been found to have committed serious excessive force, is obviously relevant to

these aspects of  Plaintiffs' *Monell* claims.

     Despite the fact that Plaintiffs' counsel has already reached an agreement with Dr.

Fullilove, which was acknowledged by Ms. O'Connor, that her deposition can last up to two

hours, the City asks that this Court limit the deposition to forty-five minutes because the

"potential by plaintiff to abuse the discovery process at this deposition is real." (City Motion at

p. 4).  To the extent that such a frivolous and hypocritical argument requires a response, the fact

that Plaintiffs' counsel will pay Dr. Fullilove $100 per hour for her testimony guarantees that the examination will be as streamlined and brief as possible.[3]

### B.      Lori Lightfoot

The City's request that this Court bar the deposition of Lori Lightfoot should also be denied as patently frivolous. As set forth in Plaintiffs' Local Rule 37.2 letter, Plaintiffs intend to prove their *Monell* claim, *inter alia*, by showing, through statistical analysis and case studies, that the City of Chicago through its OPS failed to adequately train, discipline, supervise, monitor and control officers who, like Defendant Robert Smith, are repeatedly accused of brutality. The relevant time frame for Plaintiffs' Monell claim, as previously established by this Court, is 2002 to 2007. Ms. Lightfoot served as Chief Administrator of OPS from 2002 to 2004 and was succeeded by Tisa Morris, who served from 2004 to 2007. Plaintiffs have already deposed Ms. Morris and were able to develop relevant evidence with regard to the functioning and operation of OPS from 2004 to 2007, as well as to question her about certain other OPS investigations that support Plaintiffs' claims. Plaintiffs seek the deposition of Ms. Lightfoot to fill in the gap from 2002 to 2004. As former Chief Administrator of OPS during this time frame previously found relevant by this Court, it goes without saying that Ms. Lightfoot possesses information that is relevant to Plaintiffs' *Monell* claim.

---

[3] Plaintiffs only agreed to pay Dr. Fullilove $100 per hour in order to avoid litigating a motion to compel. Since Dr. Fullilove is neither a retained expert nor a treating physician, has not been identified or disclosed by either party pursuant to Rule 26(a)(2)(A), and will not be called upon to provide expert testimony, she is only entitled to receive the $40 per day witness attendance fee and any appropriate expenses. *See Rodriguez v. City of Chicago*, 2009 U.S. Dist. LEXIS 68611 (N.D. Ill. Aug. 5, 2009); *Mayer v. Vill. of South Holland*, 2008 U.S. Dist. LEXIS 38468 (N.D. Ill. May 8, 2008); *Demar v. United States*, 199 F.R.D. 617 (N.D. Ill. 2001). Nevertheless, Plaintiffs will still honor their agreement with Dr. Fullilove despite the City's instant motion.

Furthermore, Ms. Lightfoot was directly involved in the decisionmaking process regarding a CR involving off duty police officer Alvin Weems, a case that is very similar to the City's failure to properly and adequately discipline Defendant Smith. The Weems case has been and continues to be a significant focus of Plaintiffs' *Monell* discovery. Plaintiff has extensively questioned Tisa Morris and Phil Cline about their roles in the Weems discipline, and the Plaintiffs have obtained, through investigation and discovery, most of the Weems CR file. This discovery has revealed that Ms. Lightfoot made a recommendation for separation with respect to Weems which was later overturned by Superintendent Cline after she was succeeded by Tisa Morris.[4]

The City argues that its recent naming of OPS supervisor Michael Duffy as a *Monell* witness somehow obviates the need for Ms. Lightfoot's deposition. This is a complete red herring, and an arrogant one to boot. As an initial matter, Plaintiffs have not "rejected" Mr. Duffy as the City states in its motion. Plaintiffs intend to depose Mr. Duffy after they complete Ms. Lightfoot's deposition. However, unlike Ms. Lightfoot, Mr. Duffy had no involvement in the Weems CR, and he was not in a position to make final OPS determinations concerning OPS policy, practice, findings, procedures and other pertinent disciplinary matters during the relevant time frame. Most significantly, the City is not entitled to decide for the Plaintiffs who they can depose, or who they can call as witnesses. If Plaintiffs were to name the Plaintiffs' cousin as a witness, would they be permitted to bar the Defendants from deposing the Plaintiffs? This argument is absurd, frivolous, and designed simply to further obstruct and delay.

---

[4] The City has, to date, refused to produce Ms Lightfoot's recommendation despite repeated requests over the past three months, another obstructionist tactic that may require yet another motion to compel.

11

**V.      The City Should be Sanctioned for Abusing the Discovery Process**

Rule 37 provides that where a party fails to cooperate in discovery, "if the motion is

granted - - or if the disclosure or requested discovery is provided after the motion was filed - - the

court ***must***, after giving an opportunity to be heard, require the party or deponent whose conduct

necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P.

37(a)(5)(A).  The automatic award of fees under Rule 37 was adopted to "deter a party from

pressing to a court hearing frivolous requests for or objections to discovery."  Fed. R. Civ. P.

37(a)(4) advisory committee's note on 1970 Amendments.  *See Transcap Assocs. v. Euler*

*Hermes Am. Credit Indem. Co.*, 2009 U.S. Dist. LEXIS 94264 (N.D. Ill. Oct. 9, 2009) (Mason,

M.J.) (granting the plaintiff's request for an award of attorneys' fees and costs incurred in

connection with its successful motion to compel); *Catapult Communs. Corp. v. Foster*, 2009

U.S. Dist. LEXIS 76677 (N.D. Ill. Aug. 25, 2009) (Ashman, M.J.) (same); *Lorillard Tobacco Co.*

*v. Elston Self Serv. Wholesale Groceries*, 2009 U.S. Dist. LEXIS 70027 (N.D. Ill. Aug. 5, 2009)

(Ashman, M.J.) (same).  The fact that the City intentionally filed motions for protective orders

before Plaintiffs could file motions to compel should not shield them from sanctions.  In fact,

such a pre-emptive use of motion practice further exposes the frivolous nature of the motions,

and the City's obvious motivation of avoiding sanctions. The conduct set forth above, whether

viewed standing alone, or together with the City's unremitting obstuctionist tactics throughout

the *Monell* discovery process, fully supports the entry of monetary sanctions in the form of

payment of Plaintiffs' reasonable attorneys' fees and costs expended on both motions.

**Conclusion**

In sum, the City has not set forth any non-frivolous arguments as to why there is good cause for limiting the deposition of Dr. Fullilove beyond the previously agreed to two hour limit, or barring the highly relevant deposition of former OPS Chief Administrator Lori Lightfoot. Accordingly, this Court should deny the City's motions for protective orders. Furthermore, this Court should impose monetary sanctions in the form of payment of Plaintiffs' reasonable attorneys' fees and costs incurred in responding to these motions based on the City's violation of Local Rule 37.2, failure to cooperate in discovery, and continuing acts of obstruction, delay and gamesmanship.

Respectfully submitted,

Dated: November 4, 2009

/s/ Ben H. Elson
Ben H. Elson
G. Flint Taylor
People's Law Office
1180 N. Milwaukee
Chicago, IL 60642
Attorneys for Plaintiffs